## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

MICHAEL JAMES,    )
    )
    Plaintiff,    )
    )
v.    )    **Case No. 1:21-cv-137-CLC-CHS**
    )
LANCE HUGHES, AMANDA    )    **JURY DEMANDED**
BALDWIN, JONATHAN WATKINS,    )
SERGEANT PATRICK HUBBARD (OR    )
ALTERNATIVELY SERGEANT    )
CHRISTOPHER PALMER IF SGT.    )
HUBBARD IS ERRONEOUSLY    )
IDENTIFIED), and THE    )
CITY OF CHATTANOOGA,    )
TENNESSEE,    )
    )
    Defendants.    )

## FIRST AMENDED COMPLAINT

Plaintiff Michael James states the following as his first amended complaint against

Defendants Lance Hughes, Amanda Baldwin, Jonathan Watkins, Sergeant Patrick Hubbard (or

alternatively Sergeant Christopher Palmer if Sgt. Hubbard is erroneously identified), and the City

of Chattanooga, Tennessee.

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Michael James ("Mr. James" or "Plaintiff") is an individual and a resident of

Hamilton County, Tennessee.

2. Defendant Lance Hughes ("Officer Hughes") is an individual who was, at the

pertinent times, an officer and employee of the Chattanooga Police Department.

3. Defendant Amanda Baldwin ("Officer Baldwin") is an individual who was, at the

pertinent times, an officer and employee of the Chattanooga Police Department.

1

4. Defendant Jonathan Watkins ("Officer Watkins") is an individual who was, at the pertinent times, an officer and employee of the Chattanooga Police Department.

5. Defendant Patrick Hubbard ("Sergeant Hubbard") is an individual who was, at the pertinent times, a Sergeant and employee of the Chattanooga Police Department. Alternatively, Sergeant Hubbard may be erroneously identified, and the proper name of the individual is Sergeant Christopher Palmer.

6. The City of Chattanooga, Tennessee ("Chattanooga" or "the City of Chattanooga") is a municipality in Hamilton County, Tennessee.

7. This Court has federal question subject matter jurisdiction over this case because it involves claims for violations of 42 U.S.C. § 1983 as well as other claims.

8. This Court has personal jurisdiction over Officer Hughes because he is, upon information and belief, a resident of Hamilton County, Tennessee and because this action arises out of Officer Hughes' actions in Hamilton County, Tennessee.

9. This Court has personal jurisdiction over Officer Baldwin because she is, upon information and belief, a resident of Hamilton County, Tennessee and because this action arises out of Officer Baldwin's actions in Hamilton County, Tennessee.

10. This Court has personal jurisdiction over Officer Watkins because he is, upon information and belief, a resident of Hamilton County, Tennessee and because this action arises out of Officer Watkins' actions in Hamilton County, Tennessee.

11. This Court has personal jurisdiction over Sgt. Hubbard or Sgt. Palmer because he is, upon information and belief, a resident of Hamilton County, Tennessee and because this action arises out of Sgt. Doe's actions in Hamilton County, Tennessee.

2

12. This Court has personal jurisdiction over the City of Chattanooga because it is a municipality located within Hamilton County, Tennessee.

FACTUAL BACKGROUND

13. During the early morning hours of May 6, 2020, Mr. James was driving his car lawfully on the streets of Chattanooga.

14. As Mr. James was driving, he observed another vehicle, a Nissan SUV (the "Nissan"), traveling in an erratic and dangerous manner.

15. The Nissan almost hit Mr. James.

16. The Nissan had two occupants, both minors.

17. The driver of the Nissan was only 14 years old and therefore did not have a driver's license.

18. The driver of the Nissan, as a 14-year-old, was operating the Nissan without insurance.

19. The occupants of both vehicles exchanged words while sitting at a red light after 4:00 a.m.

20. Both occupants of the Nissan "flipped off" Mr. James, and he responded with the same gesture and told them that he was going to call the police.

21. The Nissan then ran the red light, made a U-turn, and continued driving erratically and dangerously.

22. After seeing how young the driver of the Nissan was, after observing the erratic and dangerous driving, and suspecting that the vehicle was stolen, Mr. James decided to follow the Nissan in order to obtain its license plate number and report the situation to the police.

3

23. While Mr. James was a considerable distance away from the Nissan, the Nissan subsequently left the road and struck a building.

24. Mr. James called 911 and reported the Nissan's accident.

25. Mr. James saw the Nissan's occupants exit the vehicle.

26. Mr. James stopped his car some distance away from the Nissan.

27. Mr. James waited for police to arrive.

28. At some point, the Nissan's occupants entered a nearby home.

29. Mr. James remained in his vehicle until the police arrived.

30. Officer Baldwin and Officer Watkins were the first police officers to arrive on the scene. Others arrived later.

31. Mr. James exited his vehicle and walked toward the officers.

32. Mr. James directed the officers to the house that the Nissan's occupants had entered (the "House").

33. The officers went to the House and, while standing at the front door, interacted with the Nissan's occupants for a short period.

34. The officers then left the house and approached Mr. James.

35. Officer Watkins drew his gun and aimed it at Mr. James.

36. The male officer commanded Mr. James to put his hands up and turn around.

37. Mr. James complied immediately.

38. Mr. James had nothing in his hands.

39. Mr. James had not acted aggressively or threateningly toward the officers in any way.

4

40. Mr. James had interacted with the officers helpfully and very peacefully during all prior interaction with the officers.

41. Mr. James had called 911 to ask the police to come to the scene.

42. Despite the lack of any violence or aggressiveness from Mr. James, Officer Watkins handcuffed Mr. James.

43. Officer Watkins searched Mr. James.

44. Mr. James was not holding or possessing any firearm or anything illegal, and thus, the Officer Watkins' search of Mr. James revealed nothing.

45. Defendant Officer Hughes arrived on the scene relatively soon after Officer Watkins handcuffed Mr. James.

46. Officer Hughes aggressively questioned and accused Mr. James.

47. After a period of aggressive questioning and accusations, Officer Hughes conducted basic testing designed to determine whether Mr. James was intoxicated or under the influence of drugs.

48. Mr. James was not intoxicated or under the influence of drugs.

49. Mr. James had not consumed any alcohol or drugs.

50. Despite the fact that the driver of the Nissan was only 14 years old and driving before 4:30 a.m. without a driver's license and insurance, and despite the fact that the Nissan1 driver had wrecked her vehicle, neither Officer Hughes nor any other officer tested the 14-year-old driver for intoxication or for being under the influence of drugs.

51. The 14-year-old driver of the Nissan is white or Caucasian.

52. Officer Hughes is white or Caucasian.

53. Officer Baldwin is white or Caucasian.

5

54. Officer Watkins is white or Caucasian.

55. Sgt. Hubbard or Sgt. Palmer is white or Caucasian.

56. Mr. James is black or African American.

57. At the time of the events in questions, Mr. James had a valid driver's license, proof of insurance, and valid vehicle registration of the vehicle he owned and was driving.

58. At the time of the events in questions, the 14-year-old white girl driving the Nissan did not have a valid driver's license, did not have insurance, did not own the Nissan, and did not have permission to drive the Nissan.

59. Officer Hughes tested Mr. James—the African American male who had not been in an accident—for intoxication or for being under the influence of drugs or alcohol, but Officer Hughes did not conduct such a test on the 14-year-old white girl who had been in an accident.

60. Officer Hughes tested Mr. James—the African American male who was driving with a license—for intoxication or for being under the influence of drugs or alcohol, but Officer Hughes did not conduct such a test on the 14-year-old white girl who was driving without a license.

61. Officer Hughes tested Mr. James—the African American male who was driving with insurance—for intoxication or for being under the influence of drugs or alcohol, but Officer Hughes did not conduct such a test on the 14-year-old white girl who was driving without insurance.

62. Officer Hughes tested Mr. James—the African American male who was driving a car he owned and for which he had proper registration—for intoxication or for being under the influence of drugs or alcohol, but Officer Hughes did not conduct such a test on the 14-year-old white girl who was driving a car she did not own and for which she had no permission to drive.

6

63. Officer Hughes tested Mr. James—the African American male who was lawfully driving during the very early morning hours—for intoxication or for being under the influence of drugs or alcohol, but Officer Hughes did not conduct such a test on the 14-year-old white girl who was unlawfully driving during the very early morning hours.

64. Officer Baldwin, with other officers, proceeded to search Mr. James' car.

65. Officer Baldwin and other officers searched Mr. James' car without his permission.

66. Officer Baldwin and other officers searched Mr. James' car without a warrant.

67. Officer Baldwin and other officers searched Mr. James' car without legal basis or authorization.

68. Officer Baldwin and other officers searched the car of Mr. James, the African American male who had not been in an accident, but upon information and belief, they did not search the car driven by the 14-year-old white girl who had been in an accident.

69. Officer Baldwin and other officers searched the car of Mr. James, the African American male who was driving with a license, but upon information and belief, they did not search the car driven by the 14-year-old white girl who was driving without a license.

70. Officer Baldwin and other officers searched the car of Mr. James, the African American male who was driving with insurance, but Officer Baldwin did not search the car driven by the 14-year-old white girl who was driving without insurance.

71. Officer Baldwin and other officers searched the car of Mr. James, the African American male who was driving a car he owned and for which he had proper registration, but, upon information and belief, there was no search of the car driven by the 14-year-old white girl who was driving a car she did not own and for which she had no permission to drive.

7

72. Officer Baldwin and other officers searched the car of Mr. James, the African American male who was lawfully driving during the very early morning hours, but upon information and belief, there was no search of the car of the 14-year-old white girl who was unlawfully driving during the very early morning hours.

73. The search of Mr. James' car included a search of the locked trunk of the car.

74. Officer Baldwin conducted the search of Mr. James' locked trunk.

75. Officer Baldwin conducted the search of Mr. James' locked trunk without Mr. James' permission.

76. Officer Baldwin conducted the search of Mr. James' locked trunk without a search warrant.

77. Officer Baldwin conducted the search of Mr. James' locked trunk without legal basis or authorization.

78. While searching Mr. James' trunk, Officer Baldwin found a backpack.

79. Officer Baldwin opened the backpack and found a handgun case in the backpack.

80. Officer Baldwin opened the backpack without Mr. James' permission.

81. Officer Baldwin opened the backpack without a search warrant.

82. Officer Baldwin opened the backpack without legal basis or authorization.

83. Officer Baldwin opened the handgun case without Mr. James' permission.

84. Officer Baldwin opened the handgun case without a search warrant.

85. Officer Baldwin opened the handgun case without legal basis or authorization.

86. Upon opening the backpack and then the handgun case that had been stored in the locked trunk of Mr. James' car, Officer Baldwin found a handgun.

87. The handgun was lawfully owned by Mr. James.

8

88. Mr. James was legally authorized to possess the handgun.

89. The handgun was not loaded.

90. The handgun did not meet the description provided by any occupant of Nissan.

91. Mr. James was not violating the law by possessing keeping a handgun in a case which was in a backpack which was in the locked trunk of his car.

92. Parents of the minor occupants of the Nissan arrived at the scene at some point.

93. Upon information and belief, the police contacted the Nissan occupants' parents and asked the parents to come to the scene.

94. Officer Hughes and Sergeant Hubbard or Sergeant Palmer asked the Nissan occupants and their parents to come with Officer Hughes (albeit to drive separately) to sign papers and press charges against Mr. James.

95. The Nissan occupants and their parents refused to press charges against Mr. James.

96. Officer Hughes nevertheless proceeded to press charges against Mr. James.

97. Officer Hughes put Mr. James, handcuffed, in the back of Officer Hughes' police car.

98. Officer Hughes discussed his plans with Sergeant Doe.

99. Sergeant Hubbard or Sergeant Palmer approved the arrest, imprisonment, and charging of Mr. James.

100. Officer Hughes transported Mr. James to the county jail and turned him over for booking.

101. Officer Hughes signed paperwork to initiate a criminal prosecution against Mr. James for two counts of alleged aggravated assault.

102. The 14-year-old white girl was not handcuffed.

9

103. The 14-year-old white girl was not placed in the back of a police car.

104. The 14-year-old white girl was not transported to the county jail.

105. The 14-year-old white girl was not booked.

106. No criminal charges were initiated against the 14-year-old white girl.

107. Mr. James, the African American male who was driving with a valid driver's license, was arrested, but the 14-year-old white girl who was driving without a valid driver's license was not arrested.

108. Mr. James, the African American male who was driving with valid insurance, was arrested, but the 14-year-old white girl who was driving without insurance was not arrested.

109. Mr. James, the African American male who was not involved in an accident, was arrested, but the 14-year-old white girl who was involved in an accident was not arrested.

110. Mr. James, the African American male who was driving his own vehicle with valid registration, was arrested, but the 14-year-old white girl who was driving someone else's vehicle without permission was not arrested.

111. Mr. James, the African American male who was lawfully driving before 4:30 a.m. was arrested, but the 14-year-old white girl who was unlawfully driving before 4:30 a.m. was not arrested.

112. Mr. James, the African American male, was arrested despite the absence of any sworn testimony supporting any allegation of a crime, but the 14-year-old white girl was not arrested despite the fact that her violations of the law were undisputed and uncontested.

113. Officer Hughes initiated and pressed criminal charges against Mr. James, the African American male who was driving with a valid driver's license, but Officer Hughes did not

press criminal charges against the 14-year-old white girl who was driving without a valid driver's license.

114. Officer Hughes initiated and pressed criminal charges against Mr. James, the African American male who was driving with valid insurance, but Officer Hughes did not initiate or press criminal charges against the 14-year-old white girl who was driving without insurance.

115. Officer Hughes initiated and pressed criminal charges against Mr. James, the African American male who was not involved in an accident, but Officer Hughes did not initiate or press criminal charges against the 14-year-old white girl who was involved in an accident.

116. Officer Hughes initiated and pressed criminal charges against Mr. James, the African American male who was driving his own vehicle with valid registration, but Officer Hughes did not initiate or press criminal charges against the 14-year-old white girl who was driving someone else's vehicle without permission.

117. Officer Hughes initiated and pressed criminal charges against Mr. James, the African American male who was lawfully driving before 4:30 a.m., but Officer Hughes did not initiate or press criminal charges against the 14-year-old white girl who was unlawfully driving between 4:30 a.m.

118. Officer Hughes initiated and pressed criminal charges against Mr. James, the African American male, despite the absence of any sworn testimony or even a written statement supporting any allegations of a crime, but Officer Hughes did not initiate or press criminal charges against the 14-year-old white girl despite the fact that her violations of the law was undisputed and uncontested.

119. Officer Hughes placed false information on his Affidavit of Complaint.

11

120.  Officer Hughes knowingly placed false information on his Affidavit of Complaint to initiate criminal charges against Mr. James.

121.  The Affidavit of Complaint was void of any sworn eye-witness statement supporting the charges against Mr. James.

122.  Officer Hughes treated Mr. James differently because of his race and would not have arrested, jailed and charged a Caucasian under the same circumstances.

123.  Mr. James was subjected to the humiliation of being stripped naked and a body cavity search during the booking process.

124.  Mr. James was subjected to the humiliation and stress of being imprisoned.

125.  Mr. James was subjected to the humiliation, stress and oppression of being falsely charged with a crime.

126.  Mr. James remained in custody for a significant period of time before he was released on his own recognizance pending further court proceedings.

127.  In the meantime, Mr. James' car was towed from the area where it was lawfully parked.

128.  After his release from jail, Mr. James had to pay $200 to a towing company to obtain release of his car.

129.  Additionally, not all of Mr. James' property was returned to him upon or as he was being released from jail.

130.  Among other items not returned to him, Mr. James was not given back all the money that was confiscated from him at the time he was placed in custody.

131.  After being released from custody, Mr. James hired an attorney to defend against the false charges by Officer Hughes.

12

132. Mr. James had to appear in court multiple times to defend against the charges.

133. Mr. James refused to plead guilty to any charge because he was not guilty.

134. After multiple court appearances, all charges against Mr. James were eventually dismissed.

135. Mr. James suffered physical and emotional injuries as a result of the Defendants' conduct.

### COUNT 1 – VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

136. All preceding allegations are adopted and incorporated by reference as if fully restated herein.

135. Mr. James' arrest without a warrant constituted an unreasonable search and seizure of Mr. James, the use of excessive force against Mr. James, and a deprivation of his liberty without due process.

137. The pointing of a gun at Mr. James, the handcuffing of Mr. James, the detention of Mr. James, the arrest of Mr. James, and the imprisonment of Mr. James without a warrant constituted an unreasonable search and seizure of Mr. James, the use of excessive force against Mr. James, and a deprivation of his liberty without due process.

138. The full stripping and body cavity search of Mr. James without a warrant constituted an unreasonable search and seizure of Mr. James, the use of excessive force against Mr. James, and a deprivation of his liberty without due process.

139. The search of Mr. James' car without permission and without a warrant constituted an unreasonable search and seizure and deprivation of Mr. James' liberty or property interests without due process.

13

140. The search of Mr. James' locked trunk without permission and without a warrant constituted an unreasonable search and seizure and deprivation of his liberty or property interests without due process.

141. The search of Mr. James' backpack and gun case without permission and without a warrant, and the confiscation of some of Mr. James' property, constituted an unreasonable search and seizure and deprivation of his liberty or property interests without due process.

142. The Defendants violated Mr. James' rights against unreasonable searches and seizures, used excessive force against Mr. James, and deprived him of his liberty and property interests without due process.

143. Officer Hughes acted at all times under the color of state law.

144. Officer Baldwin acted at all times under color of state law.

145. Officer Watkins acted at all times under color of state law.

146. Sgt. Hubbard or Sgt. Palmer acted at all times under color of state law.

147. Upon information and belief, the actions described above were conducted pursuant to policies, practices, or customs of the City of Chattanooga.

148. Alternatively, the unlawful actions described above were the result of a lack of training by the City of Chattanooga.

149. The Defendants' actions violated 42 U.S.C. § 1983.

150. Mr. James has been damaged as a proximate result of the Defendants' violations of 42 U.S.C. § 1983.

151. Mr. James is entitled to an award of damages.

152. Mr. James is also entitled to an award of punitive damages against the individual defendants.

153.  Mr. James is also entitled to an award of his reasonable attorney's fees and litigation expenses.

## COUNT 2 – VIOLATION OF EQUAL PROTECTION RIGHTS

154.  All preceding allegations are adopted and incorporated by reference as if fully restated herein.

155.  Officer Hughes was motivated by racial animus and deprived Mr. James of his liberty and rights of equal protection because of Mr. James's race.

156.  Officer Hughes treated Mr. James, as an African American, differently and more harshly than he treated a white person.

157.  Officer Hughes failed to provide Mr. James with equal protection under the law.

158.  Officer Hughes failed to investigate, pursue, and press charges against a white person whose violations of the law were undisputed and unquestionable, but at the same time, Officer Hughes pursued baseless criminal charges against Mr. James, an African American male.

159.  Officer Hughes acted intentionally and under color of state law.

160.  Officer Hughes' actions constituted violations of 42 U.S.C. § 1983.

161.  Upon information and belief, Officer Hughes' actions were pursuant to a policy, custom or practice of the City of Chattanooga.

162.  Alternatively, the unlawful actions of Officer Hughes were the result of a lack of training by the City of Chattanooga.

163.  Mr. James has been damaged as a proximate result of the Defendants' violations of 42 U.S.C. § 1983.

164.  Mr. James is entitled to an award of damages.

165.  Mr. James is also entitled to an award of punitive damages.

15

166. Defendant Hughes is also liable to Mr. James for his reasonable attorney fees and litigation expenses.

COUNT 3 – FALSE IMPRISONMENT

167. All preceding allegations are adopted and incorporated by referenced as if fully restated herein.

168. Defendants Watkins, Hughes, Sergeant Hubbard or Palmer, and the City of Chattanooga imprisoned and confined Mr. James without legal cause or legal basis.

169. Defendants' imprisonment and confinement of Mr. James was unlawful.

170. Defendants acted out of racial animus.

171. Defendants acted out of malice.

172 Defendants acted intentionally and for the purpose of injuring Mr. James.

173. Mr. James has been severely injured, damaged and traumatized as a result of the imprisonment.

174. All actions taken by Officer Watkins, Officer Hughes and Sergeant Hubbard or Palmer were also taken on behalf of the City of Chattanooga.

175. Upon information and belief, all actions taken by the Officers Watkins, Officer Hughes, and Sergeant Doe were pursuant to a custom, policy or practice of the City of Chattanooga.

176. Alternatively, the actions of the Officers Watkins, Officer Hughes, and Sergeant Hubbard or Palmer were caused by the City of Chattanooga's lack of training.

177. Defendants Watkins, Hughes, Hubbard or Palmer, and The City of Chattanooga are liable to Mr. James for the damages he sustained.

16

178.  Defendants Watkins, Hughes, and Hubbard or Palmer are also liable to Mr. James for punitive damages.

## COUNT 4 – FALSE ARREST

179.  All preceding allegations are adopted and incorporated by referenced as if fully restated herein.

180.  Defendants Watkins and Hughes arrested Mr. James without legal cause or legal basis.

181.  Sgt. Hubbard or Palmer also approved and participated in Mr. James' arrest.

182.  Defendants' arrest of Mr. James was unlawful.

183.  Defendants acted out of racial animus.

184.  Defendants acted out of malice.

185  Defendants acted for the purpose of injuring Mr. James.

186.  Mr. James has been severely injured, damaged and traumatized as a result of the false arrest.

187.  Defendants Watkins, Hughes and Sgt. Hubbard or Palmer are liable to Mr. James for the damages he sustained.

188.  Defendants Watkins, Hughes and Sgt. Palmer are also liable to Mr. James for punitive damages.

## COUNT 5 – BATTERY

189.  All preceding allegations are adopted and incorporated by reference as if fully restated herein.

190.  Officer Watkins and Officer Hughes intentionally inflicted harmful and offensive physical contact upon Mr. James by handcuffing him, placing him in the police car in handcuffs,

17

and by causing him to be subsequently subjected to being stripped naked and subjected to body cavity searches.

191.  Officer Watkins and Officer Hughes intentionally inflicted harmful physical and offensive contact upon Mr. James by physically and unlawfully forcing Mr. James into confinement.

192.  Officer Watkins and Officer Hughes did not have the legal authority to arrest Mr. James, and therefore did not have the legal authority to handcuff him, place him in the patrol car in handcuffs, place him in confinement, or cause him to be subjected to being stripped naked and to body cavity searches.

193.  Officer Watkins and Officer Hughes' physical contact with Mr. James was unlawful and offensive and caused injury upon Plaintiff Mr. James.

194.  These actions and resulting injury infringed upon the reasonable sense of personal dignity ordinarily respected in a civil society.

195.  These actions constituted the common law tort of battery.

196.  Upon information and belief, these actions occurred because of the City of Chattanooga's negligence through failure to reasonably supervise and train Officers Watkins and Hughes.

197.  The City of Chattanooga is liable for the actions of Officers Watkins and Hughes.

198.  Mr. James has been damaged and injured as a proximate result of the Defendants' battery.

199.  Defendants Watkins, Hughes and the City of Chattanooga are liable to Mr. James for the damages and injuries he sustained.

200. Defendants Watkins and Hughes are also liable to Mr. James for punitive damages.

18

## COUNT 6 – ASSAULT

201.  All preceding allegations are adopted and incorporated by reference as if fully restated herein.

202.  Officer Watkins and Officer Hughes intentionally engaged in behavior that intimidated, frightened and threatened harm to Mr. James.

203.  Officer Watkins and Officer Hughes possessed the ability to do harm to or cause fright upon Plaintiff.

204.  These actions constitute the common law tort of assault.

205.  Upon information and belief, these actions occurred because of the City of Chattanooga's negligence through failure to reasonably supervise and train Officers Watkins and Hughes.

206.  The City of Chattanooga is liable for the actions of Officers Watkins and Hughes.

207.  Mr. James has been damaged as a proximate result of Officer Watkins and Officer Hughes' assault.

208.  Officer Watkins, Officer Hughes, and the City of Chattanooga are all liable for the damages sustained by Plaintiff.

209.  Officer Watkins and Officer Hughes are also liable for punitive damages.

## COUNT 7 – MALICIOUS PROSECUTION

210.  All preceding allegations are adopted and incorporated by reference as if fully restated herein.

211.  Mr. James was prosecuted on two counts of falsely alleged felony aggravated assault.

212. The prosecution was initiated by Defendant Officer Hughes and Sergeant Hubbard or Palmer and in their capacity as employees of the City of Chattanooga.

213. The prosecution was instigated without lawful cause or legal basis.

214. After initiating the prosecution, Defendants continued to press the prosecution.

215. Defendants initiated and pursued the prosecution through false information and without supporting evidence.

216. Defendants knew the information was false.

217. The prosecution of Mr. James was continued without probable cause.

218. Defendants instigated and continued the prosecution for the purpose of injuring Mr. James.

219. Defendants instigated and continued the prosecution with malice against Mr. James.

220. Defendants instigated and continued the prosecution against Mr. James out of racial animus.

221. Defendants instigated and continued the prosecution against Mr. James without any sworn evidence from a witness to support the prosecution.

222. The criminal prosecution against Mr. James terminated favorably to Mr. James in that both charges against Mr. James were dismissed.

223. Mr. James has been severely injured, damaged and traumatized as a result of the malicious prosecution.

224. Officer Hughes and Sergeant Hubbard or Palmer are liable to Mr. James for the damages he sustained.

225. The City of Chattanooga was also negligent in its oversight and/or training of Defendants Hughes and Hubbard or Palmer and is liable for the actions taken by Defendants Hughes and Hubbard or Palmer.

226. Officer Hughes and Sergeant Doe are also liable to Mr. James for punitive damages.

COUNT 8 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

227. All preceding allegations are adopted and incorporated by reference as if fully restated herein.

228. Officer Hughes, Officer Watkins, and Sergeant Hubbard or Palmer's actions inflicted severe emotional distress upon Mr. James.

229. Defendants acted knowingly and intentionally.

230. Defendants' conduct was outrageous, shocked the conscience, and were far outside the bounds of conduct accepted by civil society.

231. Defendants knew or should have known that their actions against Mr. James would result in serious physical and mental and emotional injuries and destress to him.

232. Defendant Hughes, Watkins and Hubbard or Palmer are liable to Mr. James for the damages and injuries he suffered.

233. The City of Chattanooga was also negligent in its supervision or training of Defendants Hughes, Watkins and Hubbard or Palmer and is liable for the actions taken by Defendants Hughes, Watkins and Hubbard or Palmer.

234. Defendant Hughes, Watkins and Hubbard or Palmer are also liable to Mr. James for punitive damages.

21

## COUNT 9 — CONVERSION

235. All preceding allegations are adopted and incorporated by reference as if fully restated herein.

236. Officer Hughes and The City of Chattanooga wrongfully confiscated and converted Mr. James' property.

237. Defendants acted intentionally.

238. Defendants Hughes and The City of Chattanooga are liable to Mr. James for the loss of his property.

239. Defendants Hughes is also liable to Mr. James for punitive damages.

WHEREFORE, Plaintiff Michael James prays as follows:

A. That process issue and that Defendants be required to answer this complaint within the time provided by law;

B. That a jury be empaneled to try this cause;

C. That this Court enter a judgment in favor of Plaintiff and against the Defendants for compensatory damages in an amount of $150,000 or such other amount as is proven at trial;

D. That the Court enter a judgment in favor of Plaintiff and against the Defendants for punitive damages in an amount of $300,000 or such other amount as the jury determines to be appropriate;

E. That Plaintiff be awarded his reasonable attorney fees and expenses;

F. That all costs be taxed to the Defendants; and

G. That this Court provide the Plaintiff with such other legal and equitable relief as it deems proper and appropriate.

22

This the 5th day of April, 2022.

Respectfully Submitted,

Law Office of Stephen S. Duggins

By:   /s/Stephen S. Duggins      
    (Stephen S. Duggins, #13222)
8052 Standifer Gap Road, Suite B
Chattanooga, TN  37421
423/635-7113 (t)
423/635-7114 (f)
steve@sdugginslaw.com

CERTIFICATE OF SERVICE

I certify that on this 5th day of April, 2022, I served or am serving a copy of the foregoing first amended complaint on adversary counsel through the Court's ECF electronic filing system.

   /s/Stephen S. Duggins      
(Stephen S. Duggins)
